# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BONFIRE, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 16-1538 (ABJ) |
| MICHAEL R. ZACHARIA, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Bonfire, LLC has brought this breach of contract action against defendants Michael R. Zacharia and 1132 19th Street NW, LLC. Compl. [Dkt. # 1]. The case arises out of a 2014 lease agreement in which Bonfire agreed to rent the premises, located at 1132 19th Street NW in Washington, D.C., from the defendants for the purpose of operating a restaurant. *Id.* ¶ 5. Plaintiff alleges that in the conversations leading up to the execution of the lease, defendants granted it a right of first refusal to purchase the property if defendants sought to sell it, but that defendants breached the oral agreement and sold the property without notifying plaintiff. Plaintiff also alleges that defendants committed fraud by failing to honor the right of first refusal, and by misrepresenting defendant Zacharia's ownership stake in the property. *See* Compl. Defendants have moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6). Mot. to Dismiss [Dkt. # 8] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 8-1] ("Defs.' Mem.") at 1–2. Since an oral promise to grant a right of first refusal to purchase property is unenforceable under the statute of frauds, and plaintiff has not stated a claim for misrepresentation, defendants' motion will be granted, and this case will be dismissed in its entirety.

## BACKGROUND

On September 18, 2014, plaintiff entered into a lease agreement with defendants to rent property at 1132 19th Street, NW and operate a restaurant called Bonfire. Compl. ¶ 5. Plaintiff alleges that while the deal was being negotiated, Zacharia, the commercial real estate broker, and manager and co-owner of the property, orally agreed to provide plaintiff with a right of first refusal to purchase the property if defendants decided to sell it. *Id.* ¶¶ 6, 8, 15. Plaintiff alleges that, in reliance on Zacharia's oral assurances, it did not insist on a written right of first refusal clause in the lease agreement. *Id.* ¶ 16. The lease did not contain any reference to the right of first refusal, and it did include a provision in which plaintiff specifically agreed to execute any documents to subordinate the lease agreement "upon demand" by the landlord. Ex. 1 to Defs.' Mot. [Dkt. # 8-2] ("Lease") § 15.[1] Also, the lease included an integration clause: "[t]his Lease contains the final and entire agreement between the parties hereto, and they shall not be bound by any terms, conditions, oral statements, warranties or representations not herein contained." *Id.* § 25(a).

On April 15, 2016, defendants asked plaintiff to sign the Tenant Estoppel Certificate and Subordination, Non-Disturbance and Attornment Agreement ("SNDA") referenced in section 15 of the lease. Compl. ¶¶ 9, 18; *see* Lease § 15. Plaintiff was not informed that defendants needed plaintiff to sign those agreements because of an impending sale of the property to a third party. *Id.* Plaintiff signed the documents, believing that it needed to do so to remain in compliance with the terms of the lease. *Id.* ¶ 19. The estoppel document "forced [plaintiff] to admit that it has no right of first refusal to purchase the Property." *Id.* ¶ 18. Defendants thereafter entered into a sale

---

1   While plaintiff does not attach the lease to its complaint, the complaint incorporates it by reference, so the Court may rely on it in deciding the motion to dismiss. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

agreement with a third party in April 2016 "without informing or allowing [p]laintiff to meet the purchase price." Compl. ¶ 17.

Plaintiff initiated this action on July 27, 2016. Compl. In Count I, plaintiff alleges that defendants breached their contract with plaintiff by selling the property to a third party without honoring the oral agreement to provide plaintiff a right of first refusal. *Id.* ¶¶ 14–25. In Count II, plaintiff alleges that defendants engaged in fraud when they demanded that plaintiff sign the estoppel and SNDA "ostensibly for bank requirements without disclosing beforehand the impending sale for which the documents were required." *Id.* ¶¶ 27–31. On September 2, 2016, defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). *See* Defs.' Mot.; Defs.' Mem. Plaintiff opposed the motion on September 16, 2016, Pl.'s Mem. in Opp. to Defs.' Mot. [Dkt. # 10] ("Pl.'s Opp."), and defendants filed their reply on September 23, 2016. Defs.' Reply to Pl.'s Opp. [Dkt. # 11] ("Defs.' Reply").

**STANDARD OF REVIEW**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

Because this Court sits in diversity pursuant to 28 U.S.C. § 1332, the Court applies state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Court will apply District of Columbia substantive law since both parties agree that District of Columbia substantive law governs this matter. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) (Mikva, C.J., dissenting in part) (explaining that courts need not address choice of law questions *sua sponte*).

**I.      Count I will be dismissed because the oral agreement to provide a right of first refusal is unenforceable.**

Defendants have moved to dismiss Count I under Rule 12(b)(6). Defs.' Mot. They argue that an oral promise to grant a right of first refusal does not constitute a valid contract, because any promise related to real estate would need to be in writing under the statute of frauds, and because the integration clause in the contract disclaimed reliance on prior oral promises. Defs.' Mem. at 6–9.

To state a claim for breach of contract, a party must establish: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by [the] breach." *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013), quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Count I fails at the first step.

In the District of Columbia, pursuant to the statute of frauds, there cannot be a valid contract in a real estate transaction unless the agreement is in writing and "signed by the party to be charged therewith." D.C. Code § 28-3502. This requirement exists "to guard against perjury and protect against unfounded and fraudulent claims." *Railan v. Katyal*, 766 A.2d 998, 1007 (D.C. 2001), quoting *Tauber v. Dist. of Columbia*, 511 A.2d 23, 27 (D.C. 1986). And the District of Columbia Court of Appeals has specifically noted that a promise to provide a right of first refusal to purchase real estate "is unenforceable under the Statute of Frauds unless it has been reduced to writing and signed by the party being charged." *Mark Keshishian & Sons, Inc. v. Wash. Square, Inc.*, 414 A.2d 834, 840 (D.C. 1980), citing D.C. Code § 28-3502.

There are three exceptions to the statute of frauds: (1) "where [a defendant's] own fraud is responsible" for the lack of a written contract, (2) "where the equitable doctrine of part performance was applicable," and (3) "where the defendant has admitted the contract." *Railan*,

5

766 A.2d at 1007–08, quoting *Hackney v. Morelite Constr.*, 418 A.2d 1062, 1066 (D.C. 1980). A plaintiff can rely on the first exception, also known as the equitable estoppel doctrine, if a plaintiff can prove that it reasonably relied on a representation by the defendant to its detriment. *See Stancil v. First Mount Vernon Indus. Loan Ass'n.*, 131 A.3d 867, 873 (D.C. 2014).

Plaintiff points to *Stancil* in an attempt to avoid the effect of the statute of frauds in this case. In that case, the plaintiff borrowed $500,000 from the defendant to purchase a home. 131 A.3d at 869. Two years later, when the plaintiff was in default on the note, defendant took steps to foreclose. *Id.* The parties then came to an oral agreement: the plaintiff would pay the lender $170,000, the lender would reduce the terms of the modification to writing, and it would not foreclose on the property. *Id.* The parties agreed that $50,000 would be used as consideration to modify the existing loan agreement, and the remainder would go to attorney's fees and a fee for the lender. *Id.* The lender never reduced the oral modification to writing, but it did accept the $170,000 payment. *Id.* Under those circumstances, the D.C. Court of Appeals held that "proof that the plaintiff detrimentally relied upon an oral agreement [is] an independent basis upon which a defendant can be estopped from invoking the statute of frauds." *Id.* at 873, citing *Landow v. Georgetown-Inland W. Corp.*, 454 A.2d 310, 313 n.3 (D.C. 1982). Because plaintiff had alleged detrimental reliance – that he had paid the $170,000 – but there was a factual dispute about the purpose and nature of the $170,000 payment, the Court of Appeals remanded the case to the Superior Court. *Id.* at 874.

Here, there is no allegation in the complaint of any acts taken in reliance upon the oral promise other than the execution of the written contract itself, so *Stancil* is distinguishable. Because plaintiff has not alleged facts to support an exception to the statute of frauds, and because

6

a right of first refusal must be in writing to be enforceable, plaintiff has not sufficiently alleged that it had a valid contract to purchase the property in the event of a sale.

Furthermore, Count I fails in light of the integration clause. The lease agreement provides: "[t]his Lease contains the final and entire agreement between the parties hereto, and they shall not be bound by any terms, conditions, oral statements, warranties or representations not herein contained." Lease § 25(a). "A completely integrated agreement is one adopted by the parties as a complete and exclusive statement of the terms of the agreement." *Ozerol v. Howard Univ.*, 545 A.2d 638, 641 (D.C. 1998). "When parties to a contract have executed a completely integrated written agreement, it supersedes all other understandings and agreements with respect to the subject matter of the agreement between the parties . . . and is viewed as the sole expression of the parties' intent." *Masurovsky v. Green*, 687 A.2d 198, 202 (D.C. 1997), citing *Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 126–27 (D.C. 1992). By contrast, a partially integrated agreement is one in which "the writing represents the agreement of the parties with respect to the matters stated therein but where there may be additional consistent terms." *Id.*, citing *Good Food Servs.*, 608 A.2d at 126; *Ozerol*, 545 A.2d at 641.

To determine whether an agreement is completely or partially integrated, a court may analyze the contract itself, any "[a]greements or negotiations prior to or contemporaneous with the adoption of a writing," *Good Food Servs.*, 608 A.2d at 127, quoting Restatement (Second) of Contracts § 214, and "[t]he presence or absence of a merger clause indicating complete integration" – a factor which may be "significant, though not conclusive." *Id.*

Defendant moved to dismiss Count I on the basis that the section 25(a) of the lease represents a fully integrated agreement. Defs.' Mem. at 7–9. In its opposition, plaintiff does not address whether the integration clause should be considered "fully integrated" or "partially

7

integrated," so it may have conceded the argument. LCvR 7(b); *see also Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 480 (D.C. Cir. 2016). But even if plaintiff had not conceded that the contract fully integrates prior promises, the contract could not be more clear: the parties agreed "not to be bound by any terms, conditions, oral statements, warranties or representations not herein contained." Lease § 25(a); *compare, e.g.*, *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 927–28 (D.C. 1992) (finding a contract provision that the contract "constitute[s] the entire agreement" between the parties to be fully integrated), *with Segal Wholesale v. United Drug Serv.*, 933 A.2d 780, 785 (D.C. 2007) (finding an invoice partially integrated because it "includes terms like quantity, price, and a description of the goods, but omits other necessary terms such as the method or timing of delivery," and because the invoice stated that it only "represents the agreement of the parties with respect to the matters stated herein"). So even putting plaintiff's concession to the side, the Court finds the contract to be fully integrated.

**II.     Count II will be dismissed because plaintiff does not allege sufficient facts to state a claim for misrepresentation.**

Plaintiff alleges in Count II that defendants defrauded it when they (1) caused plaintiff to rely on the representation that plaintiff would have a right to first refusal to purchase the property in the event of a sale; and (2) misled plaintiff by demanding that plaintiff execute the estoppel and SNDA documents "ostensibly for bank requirements without disclosing beforehand the impending sale for which the documents were required." Compl. ¶¶ 27–28. Plaintiff also alleges in Count II that it signed the estoppel and SNDA documents "under duress and threat of violating Section 15 of the Lease after the Property sale to the third party was complete." *Id.* ¶ 29.

In its opposition to the motion to dismiss, however, plaintiff retreats from its fraud claim. It concedes that "the fraud was perpetrated before the sale, not [in] the disclosure of the sale to Plaintiff," and it concedes that "Plaintiff is not asserting duress in the act of signing the [estoppel]

8

as a claim, but as a factual background to the fraud that will be proven at trial." Pl.'s Opp. at 5. And it clarifies that its fraud claim is premised on the fact that defendant Zacharia "did not disclose his ownership of the [p]roperty or sale prior to allowing [p]laintiff to bid on it." Pl.'s Opp. at 2.

So the Court understands plaintiff's fraud claim to be limited to the two events that occurred before the sale of the property: (1) the misrepresentation that defendants would honor a right of first refusal; and (2) the misrepresentation regarding Zacharia's ownership interest. Neither allegation supports a claim for fraud.

To state a claim for fraudulent misrepresentation or fraud in the inducement, a plaintiff must plausibly allege that a person or entity: "(1) made a false representation of or willfully omitted a material fact; (2) had knowledge of the misrepresentation or willful omission; (3) intended to induce [another] to rely on the misrepresentation or willful omission; (4) the other person acted in reliance on that misrepresentation or willful omission; and (5) suffered damages as a result of [that] reliance." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015), quoting *Schiff v. AARP*, 697 A.2d 1193, 1198 (D.C. 1997); *see also Jacobsen v. Hofgard*, 168 F. Supp. 3d 187, 195 n.1 (D.D.C. 2016) (noting that the elements of a fraudulent inducement claim are "essentially the same" as the elements of a fraudulent misrepresentation claim).

Plaintiff claims that it relied on the oral promise when it signed a document disclaiming any oral agreements in the integration clause. But reliance on a misrepresentation must be reasonable. *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1286 (D.C. Cir. 1988). As the D.C. Circuit has explained, "[w]ere we to permit plaintiffs' use of the defendants' prior representations . . . to defeat the clear words and purpose of the [contract's] integration clause, 'contracts would not be worth the paper on which they are written.'" *Id.* at 1287 (applying D.C. substantive law), quoting *Tonn v. Philco Corp.*, 241 A.2d 442, 445 (D.C. 1968). "On a matter of

such large significance to the parties' bargain, silence in a final agreement containing an integration clause – in the face of prior explicit representations – must be deemed an abandonment or excision of those earlier representations." *Id.*; *see also Hercules*, 613 A.2d at 932–33 (D.C. 1992) ("If [plaintiff] considered these assurances important enough to induce it to agree to the contract . . . it could have conditioned its agreement on the explicit inclusion of those representations in the contract. If [defendants] refused to go along, [plaintiff] could have walked away from the deal. Since [plaintiff] did none of these things, but instead signed the contract . . . it is bound by the terms of the instrument to which it affixed its name, and cannot now be heard to complain that it was 'browbeaten' or fraudulently induced to [the contract provision].").

The Court of Appeals in *One-O-One* concluded that "a party with the capacity and opportunity to read a written contract, who has executed it, not under any emergency, and whose signature was not obtained by trick or artifice . . . cannot later claim fraud in the inducement." *One-O-One*, 848 F.2d at 1287 (citation and alterations omitted). Plaintiff is such a party, and so its fraud in the inducement claim fails.

Plaintiff also alleges that "Zacharia served as the commercial real estate broker for the [p]roperty and . . . never identified himself as a co-owner." Compl. ¶ 8. A false representation may either be "an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013). And while "the non-disclosure of material information may constitute fraud when there is a duty to disclose, 'mere silence does not constitute fraud unless there is a duty to speak.'" *Sundberg*, 109 A.3d at 1131, quoting *Saucier*, 64 A.3d at 439. Plaintiff has not alleged that Zacharia had a duty to disclose the fact that he was a co-owner of the property. And even if Zacharia had a duty to disclose, plaintiff has not alleged it relied on the misrepresentation to its

10

detriment, nor has plaintiff pled any facts to show that it was damaged by the misrepresentation. So plaintiff's fraud claim based on Zacharia's alleged non-disclosure fails to state a claim.

## CONCLUSION

For the foregoing reasons, the motion to dismiss will be granted. A separate order will issue.

/s/ Amy B Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: April 25, 2017